UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE MANISTEE SALT WORKS
DEVELOPMENT CORPORATION,
a Michigan corporation,                                      Case No. 4:04-CV-95

              Plaintiff,                                  Hon. Richard Alan Enslen

v.

CITY OF MANISTEE, a municipal
corporation,

              Defendant,

and

LITTLE RIVER BAND OF OTTAWA
INDIANS, a federally-recognized Indian
tribe, and MANISTEE CITIZENS FOR
RESPONSIBLE DEVELOPMENT, INC.,
a Michigan non-profit corporation,

              Intervening-Defendants.                      **OPINION**
_____/

       This matter is before the Court on Defendant City of Manistee and Intervening-Defendants

Little River Band of Ottawa Indians and Manistee Citizens for Responsible Development, Inc.'s

motions for summary judgment.[1]   Also before the Court is Plaintiff Manistee Salt Works

Development Corporation's Renewed Motion for Partial Summary Judgment.  The Court has been

assisted by the parties' thorough and exhaustive briefings and finds oral argument unnecessary.

W.D. MICH. LCIVR 7.2(d).

_____

     [1] Defendant City of Manistee ("City"), Intervening-Defendants Little River Band of Ottawa
Indians, and Manistee Citizens for Responsible Development, Inc.'s motions overlap in many
material portions and will collectively be referred to as Defendants unless individually referenced.

## I.       BACKGROUND

By an Opinion dated January 25, 2005, this Court braced for what it predicted to be an all out litigation brawl.  For the most part, this herald rang true and a blow-by-blow account is as follows.

The dispute in this case originates from Plaintiff's 30-acre parcel of land located within the City of Manistee, Michigan, and bordering on Manistee Lake.  Plaintiff intended to develop the site into a 425 Magawatt coal-fired power plant.  In October 2003, Plaintiff approached Defendant City about its plans and to obtain necessary permits.  Because of the nature of Plaintiff's proposed operation, it was required to obtain a special use permit to operate a power plant on its property.[2]  Manistee, Mich., City Zoning Ordinance § 6703 (1998).  Under the Ordinance, Defendant City's Planning Commission has discretion to either grant or deny a special use permit.  *Id.* § 8602.  In making its determination, the Commission is guided by:

> B.    The general standards for determining if a Special *Use* Permit is granted or not are:
> 1.    Is the *use* reasonable and designed to protect the health, safety and welfare of the community,
> 2.    Is the *use* consistent with the intent and purpose of the Land *Use* District,
> 3.    Is the *use* compatible with adjacent land uses,
> 4.    Is the *use* designed to insure that public services and facilities are capable of accommodating increased loads caused by the land *use* activity, and
> 5.    Does the *use* comply with all applicable regulations of this Ordinance.
> 6.    Does the *use* comply with all specific standards found in the respective Land *Use* District, Section 1601 *et seq.*, and Section 1001 *et seq.* of this Ordinance.

*Id.* § 8609 (emphasis in original).

---

[2] Plaintiff has not challenged that it was obligated to seek a special use permit.

To assist in processing Plaintiff's application, Defendant City hired the engineering firm Williams & Works as a consultant.  In November 2003, Williams & Works recommended provisional approval of Plaintiff's permit based on its assessment of the section 8609 factors. However, Williams & Works cautioned that it was not rendering any opinion as to a final disposition of the application.  Several public hearings on the matter were held in November 2003, wherein both support and opposition to Plaintiff's project were voiced.  The most vocal opposition came from Intervening-Defendants, who began to flex their political might through numerous letters and e-mails.[3]

The tide began to turn against Plaintiff when Defendant City discovered the potential involvement of the Michigan Public Power Agency ("MPPA").  The MPPA's involvement meant that if built, Plaintiff's power plant may enjoy tax-exempt status.  Learning this, Defendant City sought from Plaintiff what it called a "Community Service Fee," which was essentially an up-front payment to Defendant City to compensate it for lost tax revenue.  Ultimately, negotiations stalled and Plaintiff refused to pay the Community Service Fee.

In April 2004, the Commission resolved to deny Plaintiff's permit application.  By an April 15, 2004 Resolution, the Commission found that the permit did not comply with height standards, was not compatible with adjacent land use, is not in the best interests of the community's health,

---

[3] Plaintiff has gone to great lengths to paint Intervening-Defendants with the brush of extortionists.  This Court sees nothing wrong with a sovereign Indian nation imposing its political will or a group of concerned citizens asking its elected officials to account for their concerns. Indeed, it is the electorate's very power to "extort" and require "responsiveness" from our government that makes ours a democracy.

safety, and welfare, and will strain Defendant City's resources.[4]   Defendant City adopted the Commission's decision on April 20, 2004.  Plaintiff sued Defendant City in this Court on July 13, 2004.  Intervening-Defendants were admitted into the fracas on January 25, 2005.

Plaintiff's four count Complaint alleges violations of 42 U.S.C. § 1983 under the Equal Protection and Substantive Due Process Clauses of the Fourteenth Amendment to the United States Constitution.  Plaintiff also seeks declaratory relief on supplemental state law claims premised upon Michigan Compiled Laws §§ 125.584a and 125.581, *et seq*.

## II.    STANDARD OF REVIEW

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(C).  The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson*, 477 U.S. at 255) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990).

---

[4] In a light most favorable to Plaintiff, the Court will assume that also among the Commission's rationale for permit denial, though not included in the formal Resolution, was Plaintiff's refusal to pay the Community Service Fee. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The non-moving party may not rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. Since multiple parties have moved for summary judgment or renewed a motion for partial summary judgment, each will be accorded the status of movant and non-movant when applicable.

## III.   ANALYSIS

Defendants' motions attack the sufficiency of Plaintiff's claims, specifically contending that Plaintiff cannot demonstrate as a matter of law that it was denied equal protection of law or that its substantive due process rights were violated. Plaintiff has renewed its motion for partial summary judgment seeking declaratory relief that Defendant City is not authorized to seek reimbursement for costs associated with processing Plaintiff's permit application.[5] Intervening-Defendants seek dismissal of Plaintiff's state law claims because, assuming dismissal of the federal components of this case, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining claims. Lastly, Defendants have moved for an award of attorney fees. The Court will address each contention in turn.

---

[5] Plaintiff's original summary judgment motion on this ground was denied as premature in light of *Wilton v. Seven Falls Co.*, 515 U.S. 275, 285 (1995); however, the Court invited further motion should Defendant City seek reimbursement or when it is clear it will do so.

A.      **Equal Protection**

Title 42 of the United States Code, section 1983, prohibits any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any United States citizen "of any rights, privileges, or immunities secured by the Constitution and laws."  The Equal Protection Clause prohibits states from denying "any person within its jurisdiction equal protection of the laws." U.S. CONST. amend. XIV.  Thus, for Plaintiff to survive Defendants' motions, it must show that a person acting under color of state law deprived it of equal protection of laws as secured by the United States Constitution.

Plaintiff's Equal Protection Clause claim does not appeal to this Court's strict scrutiny review because it does not allege an interference with a "fundamental right" or discrimination against a "suspect class." *Kadrmas v. Dickinson Public Schs.*, 487 U.S. 450, 457-58 (1988).  It is noted that Plaintiff proceeds on its claim as a "claim of one," and thus, must submit evidence that Defendant City treated Plaintiff "different from others similarly situated and there [was] no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Defendants contend that Plaintiff's permit application was unique, and therefore, it cannot show it was similarly situated to any other applicant.  Plaintiff asserts that it is similar to all special use applicants.

In an equal protection context, when evaluating if a party is similarly situated to another, the First Circuit Court of Appeals has artfully described the test as:

> [W]hether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result.  Exact

correlation is neither likely or necessary, but the cases must be fair congeners. In other words, *apples should be compared to apples*.

*The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) (emphasis supplied).

With regard to zoning, the Sixth Circuit Court of Appeals requires that equal protection claimants prove that they are similarly situated to other approved zoning applicants. *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036-37 (6th Cir. 1992); *see also Baskin v. Bath Twp. Bd. of Zoning Appeals*, 101 F.3d 702 (6th Cir. 1996). Plaintiff's suggestion that all special use applicants are a similarly situated does not suffice.

First, Plaintiff has not submitted any evidence that an application similar to its own was ever approved by Defendant City during similar time periods. *McDonald's Corp. v. City of Norton Shores*, 102 F. Supp. 2d 431, 438 (W.D. Mich. 2000); *see also Purze v. Village of Winthrop Harbor*, 286 F.3d 452 (7th Cir. 2002); *Barstad v. Murray County*, 420 F.3d 880 (8th Cir. 2005). Next, Plaintiff has not demonstrated that any other applicant has been reviewed under the special use permit factors, Ordinance § 8609, that its application was considered under. *McDonald's*, 102 F. Supp. 2d at 438. Lastly, and most damning to Plaintiff's equal protection claim, Plaintiff cannot point to any applicant that has secured approval for a similar use, with the kind of community-wide effect proposed by Plaintiff.

This is not to say that Plaintiff must produce an identical applicant, that is, that other power plants have been approved by Defendant City. However, Plaintiff does have the burden of demonstrating similarities to an approved applicant with regard to factors such as: size, intensity of operations, environmental impact, tax status, and potential burden on city resources.[6] Stated another

---

[6] Plaintiff merely contends that because Defendant City admitted that no special use application has received as much attention as its application, such scrutiny evidences different

way, Plaintiff needed to show that Defendant City permitted another special use applicant to strain its resources, increase pollution, enrage its citizens, blemish its skyline, and generate no tax revenue when it denied Plaintiff's permit.  This Plaintiff has not done so and Defendant City can hardly be said to have treated Plaintiff differently than others when it has never considered an application of Plaintiff's sort before.  *Accord McGuire v. City of Moraine*, 178 F. Supp. 2d 882, 898 (S.D. Ohio 2001) (city did not treat applicant differently when it was the only applicant it ever reviewed).

Therefore, because Plaintiff cannot demonstrate that it was treated differently from others similarly situated, the Court will grant summary judgment in favor of Defendants on Plaintiff's Equal Protection Clause claim.

### B.    Substantive Due Process

Although a substantive due process claim tends to merge with an economic equal protection claim, *Pearson v. Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992), because the Court never considered the rationale behind Defendant City's permit decision, it will entertain Plaintiff's substantive due process claim.  In order to establish a substantive due process violation, Plaintiff "must first establish the existence of a constitutionally-protected property or liberty interest." *Silver*, 966 F.2d at 1036.  If Defendant City has discretionary authority to deny Plaintiff's application—even if certain minimum requirements were met—then a plaintiff-applicant has no substantive due process

---

treatment between similarly situated parties.  This is simply not enough to show that Plaintiff is similarly situated with others.  Plaintiff has not demonstrated what uses theses other applicants sought, when they were sought, that the approving officials were the same for both applications, or that the same special use permit rubric was used.  This is not an apples to apples comparison, but a comparison of apples to virtually any other fruit that may grow on the vine.

property right.  *Id.* (citing *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 992 F.2d 328, 331 (6th Cir. 1990)).[7]

Plaintiff does not dispute that Defendant City had discretion to grant or deny its special use permit application.  Plaintiff contends that Defendant City acted outside the factors enumerated in Ordinance § 8609, and therefore, its decision lacks a rational basis and disregarded the facts surrounding its application.  *Pearson*, 961 F.2d at 1221.  Plaintiff asserts that the real reason Defendant City did not approve Plaintiff's permit was because it would not pay the Community Service Fee.  Whether trying to circumvent *Silver*'s holding that discretion vitiates a property interest in a permit or trying to gain credence with *Pearson*'s espousals of when a zoning decision becomes arbitrary and capricious—Plaintiff comes up short on both accounts.

First, it is the existence of discretion that invalidates Plaintiff's property interest for substantive due process purposes, *Silver*, 966 F.2d at 1036, not how that discretion is used.  Therefore, since Defendant City had discretion to grant or deny Plaintiff's permit, Plaintiff's claimed retaliatory reason for the denial is unavailing.  *Cf. Triomphe*, 49 F.3d at 203 (citing *Silver*, 966 F.2d at 1036).

Even assuming Plaintiff had a property right, Defendant City's permit denial was completely rational.  By an April 15, 2004 Resolution, Defendant City resolved that Plaintiff's proposed uses do not comply with height standards; the use is not compatible with adjacent land uses; the use is not reasonable to protect the health, safety, and welfare of the community; and the use is not

---

[7] *Silver*'s threshold requirement that a substantive due process claimant must have a property interest has been readily repeated in this Circuit.  *See Baskin*, 101 F.3d at 702; *Triomphe Investors v. City of Northwood*, 49 F.3d 198 (6th Cir. 1995).  Plaintiff's citation to *Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir. 1993) (relating to judicial oversight of prison officials), does little to undermine *Silver*'s holding.

designed to insure that public services and facilities are capable of accommodating increased loads caused by the land use or activity.  The Resolution draws on four out of the six provisos in Ordinance § 8609.  Puzzling to the Court is how this decision could ever be found to be devoid of a rational basis.  The Resolution made specific findings of fact and supported its conclusion with the factors in Ordinance § 8609.  Defendant City needed but one rational reason to pass constitutional muster, and it provided four.  *See Curto v. City of Harper Woods*, 954 F.2d 1237, 1243 (6th Cir. 1992).

Allowing Plaintiff one more logical leap, the Court will presume for the moment that Defendant City manufactured its reasons for denying Plaintiff's permit *post hoc* because it would not pay the Community Service Fee.  The Court finds this reason is also rationally related to at least two provisos in Ordinance § 8609.  First, Defendant City's denial of Plaintiff's permit when it ascertained that tax revenues were, presumably, going to outweigh the burdens on the City bears a rational relationship to protecting the health, safety, and welfare of the community.  Second, and for the same tax calculus, Defendant City could also support a finding that the project is not designed to insure that public services and facilities are capable of accommodating increased loads caused by Plaintiff's use.[8]

---

[8] The Court discards Plaintiff's citation to *Arrowhead Dev. Co. v. Livingston County Rd. Comm'n*, 413 Mich. 505 (1982), for two reasons.  First, Plaintiff has invoked this Court's jurisdiction on a federal question, 28 U.S.C. § 1331, and thus, the Michigan Supreme Court is non-binding authority.  Second, *Arrowhead* noted approvingly that although governmental agencies cannot require the developer to pay for leveling an obstruction caused by the development, it could exact the same funds through taxation or special assessment to benefitted property and individuals. *Arrowhead*, 413 Mich. at 520.  The Community Service Fee could readily be viewed as a special assessment in that it is a specific levy designed to recoup the costs of zoning changes that confer a local and peculiar benefit specific to Plaintiff's property. *Kadzban v. City of Grandville*, 442 Mich. 495, 500 (1993).

-10-

Thus, for all of the aforementioned reasons, the Court will grant summary judgment in favor of Defendants on Plaintiff's substantive due process claims.

### C. Remaining State Law Claims

As for Plaintiff's remaining state law claims, the Court declines to retain its discretionary jurisdictional mandate. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Plaintiff's state law claims seek this Court's declaration that Defendant City violated Michigan Compiled Laws § 125.584a, and that Defendant City has no authority to seek reimbursement for costs associated with Plaintiff's permit application under Michigan Compiled Laws § 125.581, *et seq.*[9]

As *Gibbs* and its progeny teach, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." 383 U.S. at 726. The Court recognizes that rote obedience to *Gibbs* is not always required and federal courts:

> [S]hould consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

On the balance, the Court finds that dismissal without prejudice of Plaintiff's state law claims is appropriate. Michigan courts should be given the opportunity to declare when statutes promulgated by a Michigan legislature have been violated or those operating under them have

---

[9] Plaintiff sought its declaratory relief through the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. The Act does not confer any independent jurisdictional rights on plaintiffs. "It merely is an enabling statute conferring discretionary jurisdiction on the federal courts." *Nat'l Emblem Ins. Co. v. Washington*, 482 F.2d 1346, 1347-48 (6th Cir. 1973) (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

exceeded their authority.  The interests of judicial economy, convenience, fairness, and most importantly comity command such a result.

Therefore, the Court will grant Intervening-Defendants' Motion for Summary Judgment on this ground and dismiss Plaintiff's state law claims without prejudice.  For the same reason, the Court will deny as moot Plaintiff's Renewed Motion for Partial Summary Judgment that Defendant City is not authorized to seek reimbursement for costs associated with processing Plaintiff's permit application.

### D.     Attorney Fees

Defendants also seek an award of attorney fees under 42 U.S.C. § 1988.  For such an award to issue, this Court must find "that [P]laintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978); *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (same holding analyzed in the realm of section 1983).  In making this evaluation, the Court is mindful  not to "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22.

After careful review, this Court cannot say Plaintiff's claims were frivolous, unreasonable, or without foundation simply because summary judgment issued against it.  On each claim, Plaintiff presented the Court with at least one colorable avenue for relief, despite falling prey to fatal deficiencies in its proofs.  Therefore, because Plaintiff's claims were not frivolous, unreasonable, or without foundation, the Court will deny Defendants' motions for attorney fees.

IV.     **CONCLUSION**

The Court will grant Defendants' motions for summary judgment on Plaintiff's section 1983 claims under the Equal Protection and Substantive Due Process Clauses. The Court will further grant Intervening-Defendants' Motion for Summary Judgment in that it sought dismissal of Plaintiff's state law claims. The Court will dismiss without prejudice Plaintiff's state law claims and will deny as moot Plaintiff's Renewed Motion for Partial Summary Judgment. The Court will also deny Defendants' motion for attorney fees. A Judgment consistent with this Opinion shall issue.

                                    /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:             RICHARD ALAN ENSLEN
        October 13, 2005            SENIOR UNITED STATES DISTRICT JUDGE